### CAGE v. CRAVENS et al. (No. 8905.)*

Court of Civil Appeals of Texas. Galveston.
May 21, 1927.

Rehearing Denied July 7, 1927.

Opinion on Motion July 11, 1927.

**I. Partnership ☞95—"Earnings" in relation to valuation of business held to mean profits or net income in partnership contract.**

"Earnings" *held* to mean profits or net income rather than gross receipts in provision of partnership contract for ascertaining value of business in case of dissolution by member's offer to purchase interests of other members.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Earnings.]

**2. Partnership ☞95—"Last preceding year," in partnership contract relating to valuation of business on basis of earnings, held to mean preceding calendar year.**

"Last preceding year," in provision of partnership contract relative to ascertaining value of business on basis of earnings in case of dissolution, *held* to mean last preceding calendar year, where partnership followed business custom of closing books at that time.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Last Preceding.]

**3. Partnership ☞95—Offer by two members of partnership to four other members to buy or sell jointly held not to comply with partnership contract.**

Offer by two members of a partnership to sell their interest jointly or to purchase jointly interest of four other members, not acceptable by any one of the offerees individually, *held* not to comply with provision in partnership contract for dissolution on member's give or take offer to buy or sell.

**4. Partnership ☞122—Whether partners' joint offer to sell or buy interest of other partners jointly was made in good faith held for jury.**

Evidence *held* to present for jury question whether offer to purchase or sell partnership interests, made by two partners jointly to four partners jointly, was in good faith or for purpose of compelling one partner to sell his interest at less than its fair value.

Error from District Court, Harris County; W. E. Monteith, Judge.

Suit by James Cravens and another against Rufus Cage, Jr. Decree for plaintiffs, and defendant brings error. Reversed and remanded, and motion to certify question to the Supreme Court refused.

Elliott Cage and Carothers & Brown, all of Houston, for plaintiff in error.

Andrews, Streetman, Logue & Mobley and Ball, Merrill & Susman, all of Houston, for defendants in error.

PLEASANTS, C. J. This suit was brought by defendants in error against the plaintiff in error to enforce a contract of sale by plaintiff in error to defendants in error of his interest in the partnership firm of Cravens, Dargan & Co., and to enjoin the defendant from exercising or asserting any rights or interest in said firm and its assets.

The petition of plaintiffs in the court below, James Cravens and K. S. Dargan, after alleging the creation, in 1918, of a partnership composed of plaintiffs, Rufus Cage, Sr., the father of defendant, and J. C. Roberts, for conducting an insurance business, alleges that Rufus Cage, Sr., had died and the defendant had acquired his father's interest in the partnership, and that the interest of J. C. Roberts in said firm had been subsequently acquired by Floyd H. West, J. L. Alexander, Jr., and Price K. Johnson. This petition further alleges that the contract of partnership contains the following provisions:

"Sixth. This contract of partnership shall continue in full force and effect between the parties, their heirs, executors and administrators, for the full period of twenty (20) years from the date hereof. If in the event, however, that, during the life of the partners, any partner or partners shall desire a dissolution of said partnership, he or they shall be entitled thereto, upon the following conditions; that is to say: The partner or partners desiring such dissolution shall give notice in writing to the other partner or partners of such desire. Such notice shall contain a statement to the effect that the partner or partners giving the notice desires a dissolution of the firm; that he or they have estimated the value of the firm's business, good will, liabilities, and assets, and have placed upon it a fixed value which shall be not less than twice the earnings of the last preceding year, which shall be stated in said notice, and thereupon the partner or partners to whom such notice is given shall have the right to determine whether he or they will buy or sell his or their interest in the partnership at the figures mentioned in the notice. The partner or partners receiving the notice shall be entitled to thirty (30) days from the receipt of the notice to determine whether he or they will buy the interest of his partner or partners, or sell his or their own interest at the price named, and shall give like notice in writing to his or their partner or partners of his or their election in that respect; and, upon failure to give notice of such election on his or their part, the partner or partners making the proposition shall be entitled at any time within thirty (30) days thereafter to pay to said partner or partners failing or refusing to make said election the total amount of the estimated net value of the interest of the partner or partners in the said partnership as made in

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 9, 1927.

the proposition giving the notice, and to demand, upon the payment or tender of payment of said sum, that the other partner or partners shall immediately retire from said business, execute a full release thereof to the purchasing partner or partners, and thereafter have no further interest in said business, its good will or assets.

"If the partner or partners to whom the notice above provided for is given shall elect to buy and shall give notice of such election to the partner or partners giving the notice as above described, he .or they shall then have thirty (30) days from the date of such election and notice in which to make payment for the other partner's or partners' interest in the business, and shall, within thirty (30) days, pay to said partner or partners, in cash, the purchase price of his or their interest.

"If the partner or partners to whom such notice is given shall elect to sell his or their interest in the partnership, and shall give notice to the other partner or partners of such election as hereinabove provided for, then the partner or partners proposing the dissolution as herein provided shall within thirty (30) days from the date of the notice of the election of the other partner or partners to sell to him or them pay to the partner or partners retiring from the partnership in cash the full sum of money at which such retiring partner's interest in the business was estimated in said proposition of dissolution above provided for.

"In the event of dissolution as herein provided for, or by mutual agreement otherwise than as herein provided for, the parties to this contract hereby expressly agree, bind, and obligate themselves that the partner or partners retaining the business shall be entitled to have all of the contracts with all companies represented by the firm, the good will of the business, to all agency contracts, and all other contracts and things of value whatsoever belonging to the firm and desired by the partner or partners retaining the business, and all of the parties hereto expressly agree, bind, and obligate themselves to each other that, in the event of such dissolution, of any dissolution, the retiring partner or partners will not engage in a similar business in Harris county,. Tex., for a period of three (3) years after such dissolution, nor in a general agency business for a period of three (3) years at any point in the state of Texas."

It is further alleged that on December 7, 1923, plaintiffs had given defendant, West, Alexander, and Johnson the following notice:

"Messrs. Rufus Cage, Jr., Floyd' H. West, J. L. Alexander, Jr., and Price K. Johnson, Houston, Texas—Gentlemen: This will advise and notify you that we, James Cravens and K. S. Dargan, who, together with yourselves, compose and constitute the partnership conducting a general insurance business, with principal office and place of business at Houston, in Harris county, Texas, under the firm name and style of Cravens, Dargan & Co., desire a dissolution of the firm and of said partnership.

"We therefore, in order to carry out our desire for such dissolution and effectuate such purpose, in accordance with the terms and provisions of the contract of partnership made, executed, and entered into by and between James Cravens, K. S. Dargan, Rufus Cage, Jr., Floyd H. West, Price K. Johnson, and J. L.

Alexander, Jr., of date February 25, 1922, and the terms and provisions of the contract or partnership dated April 1, 1918, between James Cravens, Rufus, Cage, K. S. Dargan, and James C. Roberts, adopted by and made a part of the contract of partnership of date February 28, 1922, except as expressly modified by the last-named contract, hereby offer and make you the following proposition, in accordance with the terms of said partnership contracts, to wit:

"(1) We have valued the business of the firm, including its goods will, liabilities, and assets, and have placed thereon a total value of $184,000.

"(2) We will pay you for your interests in the partnership business, including good will, liabilities, and assets, a sum or amount, based upon the value thereof, as above fixed and stated, to wit, a total amount to you of $46,000, after first deducting therefrom all amounts which you may owe the firm, or paying to us all amounts, if any, which the firm owes you individually, as the case may be.

"(3) We will accept from you for our interests in the partnership business, including good will, liabilities, and assets, a sum or amount, based upon the value thereof, as above fixed and stated, to wit, a total amount to us of $138,000, after first deducting therefrom all amounts we may owe the firm, or paying to us all amounts, if any, which the firm owes us individually, as the case may be.

"(4) This proposition is made you under the terms and within the meaning of the above referred to contracts, and, should you elect to sell, we will pay you for your interests in cash, and, if you elect to buy, you will. pay us for our interests in cash.

"(5) You are requested to decide, as required by the contract or partnership, within thirty (30) days from date of receipt of this notice, and advise us of your election to sell or buy. .

"Respectfully submitted,
"[Signed] James Cravens.
"K. S. Dargan."

It was further alleged that West, Alexander, and Johnson had agreed to sell at the price mentioned in the notice, but that defendant had failed to purchase and declined to sell at the figure named; that plaintiffs had tendered defendant $23,000, and were still ready to pay him that amount, and had thereby acquired the right to his interest in the business, and were entitled to an injunction preventing him from participating further in the business or engaging in a similar business.

The defendant answered by general denial and a special plea, in which it was alleged, among other things, that plaintiffs had made no fair estimate of the value of the business, good will, liabilities, and assets of the firm, and that same were worth not less than $400,000 instead of $184,000, as alleged by the plaintiffs at the time of their offer; that the valuation was not made in good faith, was not fair or reasonable, and did not represent the idea of the plaintiffs as to the valuation of the business, etc., but was greatly less than their own idea as to such value; that

the proposition of December 7, 1923, was so framed that it could not be accepted or rejected by any one of the four persons to whom it was addressed, and so that it must be accepted or rejected by all four acting jointly, for which reason it did not comply with the contract; that, by letter dated December 17, 1923, West had notified plaintiffs that he elected to purchase individually the plaintiffs' interest if he could act individually, but plaintiff led West to believe that he could only act jointly with the other three; that plaintiffs declined to sell to West or recognize the right of any of the four individuals to purchase; that West's offer was never revoked, and he could and would have purchased if he had not been prevented from doing so by plaintiffs.

It was charged in the alternative that plaintiffs feared that defendant would offer to purchase under the terms of the offer, and that they colluded and conspired with West and induced him to write the letter, so if defendant offered to purchase they could claim that West had made a previous offer and had a prior right to purchase; that there was in fact collusion between plaintiffs and West, whereby it was secretly agreed that West should assist plaintiffs in getting rid of defendant and purchasing defendant's interest in the business at much less than its real value, and that West was to receive and did receive proportionately more than was offered defendant for his interest, and was to receive and did receive other rewards, in that the plaintiffs doubled, or more than doubled, West's salary shortly thereafter; that plaintiffs had a secret understanding that they would purchase West's, Alexander's, and Johnson's interest at a proportionately higher figure than they offered the defendant.

It was further alleged that, when the proposition of December 7, 1923, was submitted, the plaintiffs knew that they could control West, Alexander, and Johnson so that they would not act jointly with defendant in purchasing the interests of the plaintiffs, and the entire scheme of the plaintiffs was a fraudulent and unfair scheme whereby the plaintiffs might confiscate the defendant's interest in the firm and its assets and acquire same at a price vastly less than the real value thereof and vastly less than the plaintiffs considered it worth and for vastly less in proportion than plaintiffs were willing to take for their own interests in the firm; the plaintiffs so manipulated their scheme that there was no danger of their being required to sell their interests on the proposed basis.

After hearing the evidence, the trial court, over the objections of the defendant, withdrew the case from the jury which had been impaneled to try the issues of fact, and rendered a judgment in favor of plaintiffs divesting defendant of all interests in the partnership and its assets and vesting same in plaintiffs. The decree further ordered and adjudged that the plaintiffs should, within five days after notice thereof by defendant of his willingness to accept same—

"pay to the clerk of this court the sum of $23,000, together with interest thereon at the rate of 6 per cent. per annum from January 19, 1924, to the date of such payment, together with the further sum of $2,250; with interest thereon at the rate of 6 per cent. per annum from March 31, 1924, to the date of such payment, said latter sum representing one-eighth of the contingent commission earned in 1923 and collected in 1924, and the further sum of $261.77, being the amount of defendant's salary to January 19, 1924, with interest thereon at 6 per cent. per annum from said date until paid, to be delivered by the clerk of this court to said defendant or his legal representatives. If the defendant shall not so notify plaintiffs or their said attorneys of his willingness and desire to accept said sum in accordance with this decree, then plaintiffs shall pay said sums with interest as aforesaid to the date of payment to the clerk of this court, within five days after the expiration of the time within which this case may be removed by writ of error to the Court of Civil Appeals, if no appeal has been perfected and no writ of error sued out within the time prescribed by law."

It would serve no useful purpose to attempt to discuss categorically the numerous assignments and propositions presented in appellant's brief, and we shall confine ourselves to a statement of what we regard material questions presented by the record, and of our conclusions upon these questions.

We agreed with appellant that the issue of good faith in the offer to purchase or sell made by appellees to appellants was raised by the evidence, and therefore the trial court was not authorized to take the case from the jury, over appellant's objection. Before stating the evidence upon which this conclusion is based, we shall advert to and construe the provision of the partnership contract under which appellees sought to procure a dissolution of the partnership, and determine the question of whether the offer made to appellant by appellees was sufficient to require him to either sell his interest in the partnership or buy the interest of appellees at the price named by appellees.

There being some ambiguity in this provision of the contract, we may, in construing it, properly consider the circumstances under which it was made and the oral testimony showing the purpose and intent of the parties in its execution.

The original draft of the partnership contract, which was between appellees Cravens and Dargan and Rufus Cage, Sr., appellant's father, and J. C. Roberts, contained no provision by which any one or more of the members could force dissolution prior to the expiration of the term of the contract by notice and offer to buy or sell as stipulated in the

provision of the contract before set out, but did contain the following provisions for settlement with the legal representatives or heirs of any member of the firm who might die during the existence of the partnership contract:

"In the event of the death of either partner before the expiration of the term of this contract and during the continuance thereof, the business of the firm shall be continued by the survivors for the benefit of themselves and the heirs and legatees of the deceased partner. The surviving partners, however, shall have the right at any time thereafter to purchase the interest in the business owned by the deceased partner at the time of his death, upon the following basis, to wit:

"The net income of the business, without deduction or allowance to either partner for the monthly salaries herein provided for each partner, or which may hereafter be so provided, for the calendar year next preceding the year during which such surviving partners may elect to purchase such interest, shall be ascertained, and the surviving partners shall pay to the legal representatives of the deceased partner in cash, or in such equivalent as may be satisfactory to the heirs, two and one-half times the amount of the total net income from the partnership of the deceased partner for such preceding calendar year. Upon paying the amount as herein provided for, the surviving partners shall be and become the sole owners of the business of the firm, including its contracts, good will, office furniture, maps, appliances, automobiles and appurtenances which are not to be considered as having any value as physical assets as that term is hereinafter used.

"Thereupon a trial balance shall be taken as of the date of the election of the surviving partners to purchase the interest of such deceased partner, and the books shall be closed as of that date; then the surviving partners shall proceed to liquidate the outstanding liabilities out of the physical assets owned by the partnership. A complete statement of such liquidation shall be prepared annually on the 1st day of January thereafterward, and a copy thereof furnished to the heirs, legatees, and legal representatives of such deceased partner. Whenever there shall be any surplus of money collected over and above the liabilities, such surviving partners shall pay to the heirs and legatees or legal representatives of such deceased partner the proportion of such surplus which the interest of such deceased partner bears to the whole interest of the partnership."

Mr. Roberts testified, in substance, that, after reading over the original draft of the contract, he told his associates that he thought it ought to contain a provision for the protection of the living members of the firm similar to the one providing for settlement with the heirs or legal representatives of a deceased member. He says:

"We met, and I put the contract down after reading it carefully, and told Mr. Cage that it was not satisfactory to me in its present form. I remember quite distinctly his answer was, if it was not satisfactory, we would drop the matter then, and I answered by stating that it was agreeable. At that time, as I remember it, Mr. Cravens asked me what my objection to it was, and I told him that I desired a clause inserted in there to take care of me as a live member, and based my argument on the fact that there was a clause stipulated in there to take care of a deceased member. With that Mr. Cage answered and asked me what would satisfy me in that clause, and I told him to stipulate the same clause for a live member as was already used in the contract for a deceased member. His answer was he didn't think that was consistent, but he would agree to make it 'two' on the same basis. That being agreeable to me, I acquiesced in his view, and he immediately took the contract and left and brought them back to me for signatures, and I signed them."

This testimony is uncontradicted, and we think conclusively shows that the parties intended by the provisions of the contract relating to a dissolution of the firm by the purchase of one or more of the members of the interest of other members, that such offer of purchase should be upon the same basis of value as that provided for in the purchase of the interests of a deceased member, except that the offer was not required to be two and one-half times the amount of the net income of the business for the preceding calendar year, but should be not less than twice the amount of such income for the calendar year preceding the offer of purchase.

[1] It follows from this conclusion that appellees' contention that the clause, "twice the earnings of the business for the last preceding year," means twice the net income of the business for the preceding calendar year, must be sustained.

It may be that, in the absence of the testimony of Mr. Roberts, the clause, "earnings of the business for the last preceding year," should be construed to mean that the net income of the business for the last preceding calendar year.

[2] It is clear that the parties intended by this provision to provide a method for ascertaining the value of the business, and it is manifest that no correct estimate of this value could be based upon gross earnings of the business, and, when the word "earnings" was used as designating the basis for estimating the value of the business, it is reasonable to assume that they intended it to mean profits or net income rather than gross receipts. The evidence shows that this business, in common with most, if not all, business concerns, took stock and balanced its books the first of each calendar year to determine its earnings or income for the last preceding calendar year, and the contract provision as to settlement with the representatives of a deceased member, in recognition of this universal custom, provides that the net income for the last preceding calendar year shall be the basis of valuation of the deceased member's interest in the business. If the parties had intended by the words "last pre-

ceding year," as used in the provision for the purchase of a living member's interest, that the value of such interest should be based on the net income of the business for the twelve months next preceding the date of the offer of purchase, it seems to us they would have expressly so stated, and would not have used words which would usually be understood, when used with reference to the yearly income of a business, to mean a calendar year. We think these conclusions are made certain by the uncontroverted testimony of Mr. Roberts, before set out.

We cannot, however, agree with the appellees in their construction of other parts of the provisions of the contract under which they seek to force appellant to sell them his interest in the business for the sum offered him by them.

[3] The partnership contract by its terms was to continue in force for twenty years, and, realizing that one or more members of the firm might before the expiration of that time become dissatisfied and desire to sever the partnership relations, the parties to the contract, on the suggestion of Mr. Roberts, inserted the provision that—

"In the event, however, that during the life of the partners, any partner or partners, shall desire a dissolution of said partnership, he or they shall be entitled thereto upon the following conditions; that is to say: The partner or partners desiring such dissolution shall give notice in writing to the other partner or partners of such desire. Such notice shall contain a statement to the effect that the partner or partners giving the notice desires a dissolution of the firm, that he or they have estimated the value of the firm's business, good will, liabilities, and assets and have placed upon it a fixed value, which shall be not less than twice the earnings of the last preceding year which shall be stated in said notice, and thereupon the partner or partners to whom such notice is given shall have the right to determine whether he or they will buy or sell his or their interest in the partnership at the figure mentioned in the notice."

This is clearly a provision for a give or take offer to purchase or sell at the estimated value of the interest involved in the offer, such estimated value to be not less than twice the amount earned by the interest involved as net income from the business for the preceding calendar year.

This provision furnishes two safeguards to each and every member of the firm against being forced by other members to sell his interest for less than its fair value.

Before he can be required to accept an offer to purchase, such offer must not only be twice the amount of his income from the business for the preceding year, but the amount offered must be upon an estimated value of the business at which the party making the offer is willing to sell his interest, and the offer must contain an agreement to sell at such price.

This willingness on the part of the party making the offer to purchase to sell at the same valuation is just as necessary to make the offer of purchase sufficient to compel its acceptance as the other requirement that the offer shall be not less than twice the income of the interest involved from the business during the preceding year.

It goes without saying that, if the offer to purchase contained no offer to sell on the same valuation, the party receiving such offer is not bound either to accept it or offer to buy the interest of the party making the offer at the same valuation.

The written offer of appellees contained in the notice sent appellant, which we have before set out, is in form an offer to appellant, West, Alexander, and Johnson to purchase their joint interest in the business or to sell appellees' interest to them jointly. We cannot agree with appellees that such offer was in compliance with the partnership contract. To so interpret the contract would place it in the power of one or more members of the partnership to offer a price to other members which they are not willing to accept for their interest, and protect themselves against having to accept such price by making their offer to sell, not to each member whose interest they offer to purchase, but to several members jointly, knowing that one or more of such members can or will agree with others to jointly purchase the offered interest.

This is just what appellant claims was done in this case, and we think is clearly contrary to the partnership contract when that instrument is given an interpretation reasonably necessary to effectuate the evident purpose and intention of the parties in its execution.

Appellant's statement in his letter to appellees, in answer to their offer of purchase, that he elected to sell his interest if he was paid therefor the amount to which he was entitled under the contract of partnership, was not an acquiescence by him in the sufficiency of the form of the order, especially when this letter expressly states that under the terms of the contract any one of the parties to whom the offer of purchase was made would have the right to purchase appellees' interest.

It is true appellant by this letter expressed no desire to purchase and elected to sell at a price satisfactory to him, but such election in no way affects the question of whether the valuation placed by appellees upon the business was one which they were willing to accept for their interest, and, as we have before stated, unless the offer was based upon such valuation, appellant was not bound under his contract to accept it.

[4] The fact that the offer was made in such form that neither appellant nor any one of the partners to whom it was jointly made could accept it individually is in itself a circumstance casting doubt upon the question of

appellees' willingness to sell at a price based on the valuation of the business upon which their offer to purchase was based. If they were willing to sell at such valuation, what possible difference could it have made to them whether one or all of the other members purchased their interest, and why should they have declined, as the evidence shows they did, to consider a purchase by one of the other members? There was evidence from which the jury could have found that appellees knew when they made the offer that at least one of the members to whom the offer was made would not agree with the other members to jointly purchase appellees' interest. There was also evidence tending to show that the offer was less than the fair and reasonable value of appellant's interest in the business. The evidence further shows that West and Johnson were paid more for their interests than the amount offered appellant for his.

In this state of the evidence the appellant was entitled to have the jury pass upon the question of whether the appellees' offer to purchase was a bona fide give or take offer, as required by the partnership contract. If it was not, appellant cannot be compelled to accept it and surrender his interest in the business to appellees.

Of course appellees could not be made to pay appellant whatever amount a jury might find his interest to be worth, and evidence as to the value of the business was only admissible upon the question of whether appellees' offer was one which they were willing to accept for their interest.

Before appellant can be compelled to part with his interest in the partnership, there must be a strict compliance by those seeking to acquire his interest with the terms of the partnership contract providing what appellees designate in their brief as an "arbitrary" method of dissolution. We hardly think the method can be termed arbitrary, but it may be used to effect an involuntary surrender of property rights, and must be used in good faith and in conformity with the intent and meaning of the agreement.

There is nothing in this record to indicate any actual fraud or any unconscionable action on the part of appellees, but the evidence does raise the issue of whether the offer to purchase appellees' interest was a bona fide offer under the contract as we interpret it, and the trial court should have submitted that issue to the jury.

If other errors are pointed out in appellant's brief, they are not such as will likely occur upon another trial.

For the reasons indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

In their motion for rehearing, appellees complain of the statement in our opinion that the original draft of the contract of partnership between appellees, appellant's deceased father, Rufus Cage, Sr., and J. E. Roberts, contained no provision by which any one or more of the members of the partnership could force a dissolution of the firm prior to the expiration of the term of the contract by notice and offer to buy or sell as stipulated in the partnership contract finally executed.

In support of their contention, appellees call our attention to the language of appellant's tenth assignment of error, from which it can be fairly inferred that the original draft of the contract did contain a provision for dissolution of the partnership prior to the expiration of the term stated in the contract, and the only addition made in the final contract to the original draft of this provision was the insertion of the clause, "which shall not be less than twice the earnings of the last preceding year."

We inferred from the testimony of Mr. Roberts, set out in our opinion, that the original draft of the contract contained no dissolution provision of any kind, and so stated in our opinion. We did not and do not now regard the fact as at all material in determining the question upon which we reversed the judgment of the trial court, but, since appellees' counsel deem the matter material, we make the correction in our opinion as above indicated.

Appellees have also filed a motion to certify to the Supreme Court the question involved in our decision reversing the judgment in this case.

We recognize that the question upon which our decision turned is not free from doubt, and, if there was any doubt of the jurisdiction of the Supreme Court to decide the question upon application for writ of error, we would grant the motion to certify. There can be no doubt under our present statute of the jurisdiction of the Supreme Court upon application for writ of error to decide the question, and, since it lies at the foundation of plaintiff's cause of action, it is inconceivable that a proper application for writ of error would be disposed of without a decision of the question. Under the present condition of the docket of the Supreme Court, we think the most expeditious and satisfactory method of obtaining a decision by that court upon the correctness of our opinion in this case is by application for writ of error.

Both motions should in our opinion be refused, and it has been so ordered.

Refused.